BAY TRUST COMPANY, TRUSTEE, ESTATE OF LOUIS E. OPPENHEIM, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OSCAR LOWMAN, PAULINE H. SLOMAN, AND FLORENCE H. POLOZKER, EXECUTORS OF THE ESTATE OF JENNIE H. OPPENHEIM, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SARA O. LEVY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EARL H. SPIESBERGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76356, 77886, 79701, 79702. Promulgated March 27, 1936.

*Edward S. Clark, Esq.*, for the petitioners in Docket Nos. 76356, 79701, and 79702.

*C. Frederick Stanton, Esq.*, for the petitioners in Docket No. 77886.

*Thomas F. Callahan, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The respondent determined a deficiency of $1,289.66 in the 1931 income tax of the trustee of the estate of Louis E. Oppenheim (Docket No. 76356), and determined liability therefor of Levy and Spiesberger as transferees (Docket Nos. 79701 and 79702). He also determined a deficiency of $2,699.28 in the 1932 income tax of Jennie H. Oppenheim (since deceased), the widow of Louis E. Oppenheim and one of the beneficiaries of his trust estate (Docket No. 77886). These determinations are admitted by the respondent to be inconsistent in theory, and the question to be determined is whether an annual payment made in 1931 by the trustee of Louis E. Oppenheim's estate to Jennie H. Oppenheim is a proper deduction of the trustee for that year under section 162 (b), Revenue Act of 1928,[1] and whether a similar payment in 1932 is taxable income of the widow. The facts are all stipulated, and a brief statement will suffice for a consideration of the issue to be decided.

Louis E. Oppenheim died in Michigan on June 29, 1921, survived by his widow, Jennie H. Oppenheim, and two sisters, Carrie Spiesberger and Sara Levy. By his will he set up a trust of specific securities and directed that the net income therefrom should be paid quarterly to his widow for life, the property then to be distributed to the sisters. The widow refused to recognize the will and began a proceeding for intestate administration. Thereupon, on September 14, 1921, the interested parties made a settlement agreement whereby the widow would receive:

* * * an annuity during her life of $30,000 per annum, payable in equal monthly installments of $2,500 on the 1st day of each month commencing July 1st, 1921. The trust described in Item XII of said Last Will and Testament of Louis E. Oppenheim, deceased, shall, as supplemented and changed by this agreement, exist and continue to exist for the purpose of paying said annuity.

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

    *        *        *        *        *        *        *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

A trust was set up consisting of the securities provided in item XII of the will and other property of the estate. If the trust income were less than $30,000 in any year, the remaindermen were to make up the difference, upon failure of which the trustee might sell corpus to the extent necessary to enable it to pay the $30,000 to the widow. The agreement was immediately supplemented to provide that not only the annuity but also taxes and carrying charges should be paid out of trust income.

In October 1921, the will and the compromise agreement were probated in Michigan. In 1932, the agreement was further modified so that the remaindermen were only to make up a deficiency in an amount necessary to pay the widow $24,000. In 1931, $30,000 was paid to the widow out of trust income, and in 1932, $28,000 was paid to her, of which $19,268.45 was trust income.

The trustee, in its fiduciary income tax return for 1931, deducted $30,000 as trust income distributed to the widow, and she included the amount in her individual tax return as income. The Commissioner disallowed the deduction by the trustee and has withheld action upon a claim for refund filed by the widow. For 1932, the Commissioner determined that the $28,000 received by the widow should be included in her income, and has determined a deficiency against her accordingly.

The trustee and its transferees contend that the amount paid to the widow was a distribution to her of trust income and therefore deductible upon the fiduciary return. The estate of the widow contends that the amounts received by her were not such distributions of income as were deductible by the trustee and taxable to her. The Commissioner stands neutral, although expressing his preference for the trustee's position.

In our opinion, the widow's position is supported by the authorities. *Helvering v. Butterworth*, 290 U. S. 365; *Helvering v. Pardee*, 290 U. S. 365; *Boston Safe Deposit & Trust Co. v. Commissioner*, 66 Fed (2d) 179; *Bridgeport-City Trust Co., Trustee*, 32 B. T. A. 1181 (on review, C. C. A., 2d Cir.); *Houston Land & Trust Co., Trustee*, 33 B. T. A. 73; *Old Colony Trust Co., Trustee*, 33 B. T. A. 311; cf. *John K. Howard et al., Trustees*, 34 B. T. A. 57. It seems to us not important whether the widow is to be regarded as deriving to any extent from the original will, or from the compromise agreements, or from both. She chose not to take under the will and not to take by statute, but instead to take by the agreement which was voluntarily made in substitution for both. But whether she may be said to have taken a legacy or a gift or contractually, we understand the *Butterworth* case, when read in the

light of the earlier cases which it disapproved,[2] as rejecting the view that she took by purchase. The amount must be regarded, therefore, either as a distribution of income or as an annuity, the significance of the alternative being for present purposes the tax effect upon the trustee and upon the widow under section 162 (b). Upon this subject the Supreme Court has spoken authoritatively in *Helvering* v. *Pardee, supra,* in which, as appears from the facts stated in the dissenting opinion, the periodical payments were a charge first upon income and only secondly upon corpus, and were apparently in fact paid in the taxable year from income. Nevertheless, the payments, because they were fixed in amount and payable in any event, were treated as annuities and held to be not deductible by the trustee. This was in contradistinction to the payments in the *Butterworth* case, which were treated as distributions of net income. Following those decisions, the later decisions above cited have disapproved the deduction by the trustee of distributions fixed in amount and payable without regard to whether they were within or exceeded the income of the trust. The opinion in *John K. Howard et al., Trustees, supra,* is not at variance with this line of decisions, since it was found in that case that the definite duty of the trustees was to distribute all the income, and this was held not affected by the added discretion to distribute corpus if in their opinion the needs of the widow required it. It must be held, therefore, that the literal application of the statute to permit the deduction by the trustee of so much of the trust income as is distributed currently is precluded by judicial construction.

The idea that the trust from which the widow's payments were derived can be recognized as three trusts, one created by the will, another created by the agreement, and a third created by the remaindermen's contributions, can not be adopted. There was, in the taxable year, but a single trust, and the provision for further contributions by the remaindermen did not serve to make it otherwise. Nor can we regard the possible contributions of the remaindermen as income of the trust, the distribution of which is deductible. The widow's right was against the trust for a fixed annuity, and the obligation of the remaindermen to make contributions to the trust sufficient to enable the trust to pay the annuity without invading its corpus did not affect the character of the widow's right.

There is argument as to whether in Michigan the probate of the compromise agreement serves, as in Rhode Island, to stamp the contractual arrangement as testamentary, *Smith* v. *Commissioner,* 78 Fed. (2d) 897,[3] or whether it retains its inherent contractual char-

---

[2] *Warner* v. *Walsh,* 15 Fed. (2d) 367; *United States* v. *Bolster,* 26 Fed. (2d) 760; *Allen* v. *Brandeis,* 29 Fed. (2d) 363.

[3] See Case Note, Harvard Law Review, vol. 49, p. 844 (March 1936).

acter although adjectively affected by probate law. Cf. *Hu L. McClung et al., Executors*, 13 B. T. A. 335; *Bernard O. Kearney*, 31 B. T. A. 935; *Rose* v. *Southern Michigan National Bank*, 255 Mich. 275; 238 N. W. 284. It is unnecessary in this proceeding to consider the argument, since in any event the trust obligation to the widow is, irrespective of its genesis, fixed in amount despite a possible inadequacy of income from which to defray it.

In Docket No. 77886 the Commissioner erroneously included in the income of Jennie H. Oppenheim the amount received from the trust; in Docket No. 76356 he correctly denied the deduction to the trustee; and in Docket Nos. 79701 and 79702 the petitioners are liable as transferees for the resulting deficiency of the trust estate.

*Judgment will be entered under Rule 50.*